<hr />

Monson v. Drakeley.

<hr />

———•♦•———

STILES F. MONSON *vs.* ROBERT I. DRAKELEY.

Where a note written "I promise, &c.," is signed by several persons, and there is nothing on the face of the note to indicate a different intention, it will be regarded as a joint and several note.

Where several persons sign a note without qualifying their signatures in any way they will all be taken to be makers of it.

Monson *v.* Drakeley.

A party can not, subsequently to the execution and delivery of a note, unless in pursuance of an arrangement made before such execution and delivery, become a joint promissor and maker of it.

The right of mutual contribution exists only among those who are sureties for the same thing. But equity looks at substance more than form, and if several persons enter into contracts of suretyship which are the same in their legal character and operation, though by different instruments, at different times, and without the knowledge of each other, they will be bound to mutual contribution.

It is often very difficult to determine whether a party is a surety, guarantor, endorser, or maker. But when the real character of parties is clearly ascertained, their proper legal rights and obligations can be readily determined.

A guarantor of the ability of the maker is in no sense in privity with the sureties. His undertaking is collateral and independent. He is not chargeable by them with contribution and can not claim it; and if he pays the debt his remedy is against the principal alone for indemnity.

A supplemental surety for all the prior parties, including the principal as well as sureties, has entered into a different engagement. His liability is to the holder in case of the default of all those parties. There is no mutuality between him and the other sureties, he is not liable to contribution, and if he pays the note his remedy is against the parties by whose default he has suffered, for full indemnity.

The obligation of co-sureties, though several, is not collateral. It is for the same thing. They have a right of indemnity against their principal, and there is generally such mutuality between them as to render the right and duty of contribution reciprocal.

A note on demand was given for a loan made by the payee, the note being signed by the borrower and two others, the latter being sureties, but that fact not appearing on the face of the note. Several months afterward the payee, not being satisfied with the names, called on the principal to furnish another name, and the latter procured the defendant to sign his name under the others, giving him security therefor, no qualification or explanation being added to his signature. The holder did not agree to forbear to collect the note in consideration of the additional security, but in fact would, but for that, have proceeded to enforce payment. One of the original sureties having been compelled to pay the note, it was held that the defendant was bound to contribute one-third of the amount paid.

The defendant having signed at the request of the principal and for his sole benefit, and upon security furnished by him, and with no knowledge on the part of the other sureties, it was held that he could not properly be regarded as having signed as surety for all the prior signers.

Although there was nothing on the face of the note to indicate that the last two signers were sureties, yet it appeared that the principal and both the original sureties were brothers and that the defendant was their brother-in-law, and that all lived in the same town. Held, that this was a fact of some importance as indicating that he had knowledge of their relation to the paper and to each other in respect to it.

And held that the law in the circumstances might presume that, by putting his name under those of the original sureties and with no qualification

attached to his signature, he intended to do precisely what they had previously done, that is, to become a surety with them for the principal.

AMICABLE SUBMISSION to the Superior Court in New Haven County, upon the following agreed statement of facts :

On the 17th day of March, 1868, one Daniel S. Lemmon made a loan of $1,600 to George A. Monson, upon his executing with Frank S. Monson and Stiles F. Monson the following note :

" WOODBURY, March 17, 1868.

" For value received I promise to pay to Daniel S. Lemmon sixteen hundred dollars, on demand, with interest at six per cent. and all taxes.          GEORGE A. MONSON.

FRANK S. MONSON.

STILES F. MONSON."

All the parties lived in Woodbury in this state.    Stiles F. Monson was the father, and Frank S. Monson the brother, of George A. Monson, and both signed the note as sureties for him.

In December, 1868, Lemmon believed the responsibility of the signers of the note to be much impaired, and required of George A. Monson further security, either by mortgage or by one or more additional names upon the note, and thereupon his brother-in-law, Robert I. Drakeley, was, on the 23d of December, 1868, induced by George A. Monson to sign the note ; which he did by writing his name under those of the other signers, without any qualification or explanation appended to his signature.    As indemnity for his liability he at the same time took a mortgage from George A. Monson and his wife of certain real estate belonging to the wife, and he now holds the same.    At the time Drakeley signed the note, there was no agreement by Lemmon in consideration thereof to give the signers of the note, or either of them, any additional time for payment, and nothing on that subject was said.    But without the signature of Drakeley, or some other additional security, Lemmon would have attempted without much further delay to collect the note from some one or all of those whose names were then signed to it, and Drakeley's signature operated in fact to postpone the collection of the note.

None of the other original signers of the note ever at any time requested Lemmon to proceed to collect the note from George A. Monson. He is now insolvent and has long been so, and the place of his present abode is unknown. But after Drakeley became a party to the note, he requested Lemmon to proceed against the other parties, and entered into a written obligation to pay the expenses of such litigation if it did not result in the collection of the note.

Stiles F. Monson has since paid the whole note, and now claims of Drakeley a contribution of one-third the amount paid by him. Drakeley denies all liability to contribution.

Upon these facts the case was reserved by the Superior Court for the advice of this court.

*Webster* and *Watrous*, for the plaintiff.

1. The plaintiff having been compelled to pay the note, has of course a right to compel contribution from all his co-sureties. No citation of authorities upon this well settled principle is necessary. If the defendant is to be regarded as a co-surety with the plaintiff and Frank S. Monson, he is clearly liable.

2. The defendant is such co-surety. Lemmon, the holder, as is found, required of George A. Monson, the principal, further security, " either by a mortgage or by one or more additional names to the note." It was upon this requirement of the holder, communicated to the defendant by the principal, that the defendant signed his name to the note. He put his name there as " an additional name to the note." In doing this he could have had no other intention than to make himself a surety for the principal precisely to the same extent as the other sureties.

3. There was sufficient consideration for the defendant's undertaking. It is found that the holder would have proceeded to collect the note if this additional security had not been given, and that upon its being given he forbore to collect it. Although it is not found that there was a positive agreement for forbearance, yet there was clearly an understanding to that effect, and the court will infer that the for-

bearance was upon such an understanding. This very forbearance, which it was the object of the defendant by signing the note to secure, was an injury to the other sureties, if the defendant is not liable to contribute, inasmuch as George A. Monson was then solvent and the note could have been collected of him, while by the delay this opportunity has been lost.

4. It is no objection to a recovery that the defendant signed the note some time after it was made. If he cannot be regarded as an original maker, yet he may be a co surety. It is not necessary that co-sureties sign at the same time or even the same instrument. If the defendant intended to become surety for the principal, it is no matter when or how he signed his name. 1 Story Eq. Jur., § 495 ; *Deering* v. *Earl of Winchelsea.* 1 Cox, 318 ; *Craythorne* v. *Swinburne*, 14 Ves., 160.

5. It is especially inequitable that the defendant should seek to avoid his liability to contribution while holding security in his hands. If the other sureties are not able to reach the security by reason of the fact that it is the property of the wife of the principal and not of the principal himself, yet the defendant can avail himself of it to indemnify himself for whatever he is compelled to pay.

*Cothren*, for the defendant.

1. ·The defendant was simply a guarantor of the Monson note to Lemmon ; at most a guarantor of the responsibility of all the Monsons, but a co-surety of neither. His undertaking was collateral, and he was liable only to Lemmon, the payee of the note, in case he failed to collect it of the Monsons, who in this case were all principals, at least so far as the defendant was concerned. 2 Kent Com., 111 ; Story on Cont., § 870 ; *Lamonrieux* v. *Hewit*, 5 Wend., 307 ; *Austin* v *Curtis.* 31 Verm., 64 ; *Springer* v. *Hutchinson*, 19 Maine, 359. Unless the signing of his name by the defendant on the face of the note may imply a consideration, his undertaking, even so far as Lemmon was concerned, was absolutely void for want of consideration. Lemmon did not agree to extend the

time, nor do anything else, in consideration of his signature; nothing was said on that subject. All the authorities show that the guarantee of a note, like any other promise without consideration, is void. Chitty on Bills, 250, and notes; Story on Prom. Notes, 583; 1 Parsons on Cont., 496; *Rix* v. *Adams*, 9 Verm., 233.

2. A man cannot become the maker of a note already made, negotiated and delivered. *Cobb* v. *Titus*, 10 N. York, 198; *McCaughey* v. *Smith*, 27 id., 39, 41; *Brownell* v. *Winnie*, 29 id., 400, 408; *Catton* v. *Simpson*, 8 Adol. & El., 136. The defendant did not become a party to the note till nine months after the note was made and delivered. Such a signature will never discharge a surety, nor any original party to the note, because it is a new contract between the holder and the guarantor in which the sureties have no part. Story on Cont., § 870; *Austin* v. *Curtis*, 31 Verm., 64.

3. There was no privity of contract between the defendant and Stiles F. Monson, the present plaintiff, or rather no contract at all, and of course no consideration. The latter did not know of the transaction till long afterward. Their minds never met. 1 Parsons on Notes and Bills, 233 and notes; *Tyler* v. *Binney*, 7 Mass., 479, 482; *Harris* v. *Brooks*, 21 Pick., 195.

4. Where a promissory note is paid by a surety, the guarantor is never held to be liable to contribution. 1 Parsons on Cont., 36; Chitty on Cont., 499; Chitty on Bills, 250; *Tyler* v. *Binney*, 7 Mass., 479; *Upham* v. *Prince*, 12 id., 14; *Tenney* v. *Prince*, 4 Pick., 385; *S. C.*, 7 id., 243; *Longley* v. *Griggs*, 10 id., 121; *True* v. *Fuller*, 21 id., 140; *Springer* v. *Hutchinson*, 19 Maine, 359; *Rix* v. *Adams*, 9 Verm., 233; *Bailey* v. *Freeman*, 4 Johns., 280; *Leonard* v. *Vredenburgh*, 8 id., 28; *Lamonrieux* v. *Hewit*, 5 Wend., 307.

PHELPS, J. This case comes before us by way of an amicable suit reserved by the Superior Court at the request of the parties for the advice of this court, on the question whether the defendant, whose name is last signed to the note, is co-surety with two others, of the principal, so as to be liable to

contribute to one of them who has paid the whole debt. It appears from the agreed facts that the loan was made to and for the sole benefit of George A. Monson, and that the creditor at the time the loan was made required the signature of Frank S. Monson and Stiles F. Monson to the note, and that they all signed it upon its face and before its delivery to the payee, and so far as appears from the paper itself intended to be, and were, joint and several makers of it. The payee nine months afterwards became dissatisfied with the responsibility of the names then attached to the note and required the principal to furnish additional security either by mortgage or the name of some other responsible party; whereupon the defendant, at the request of the principal, placed his name upon it under the others, and took from him mortgage security on property belonging to his wife. After the defendant's signature the note read as follows :—

"WOODBURY, March 17th, 1868.

"For value received I promise to pay Daniel S. Lemmon sixteen hundred dollars, with interest at six per cent. and all taxes.                                 GEORGE A. MONSON.

FRANK S. MONSON.

STILES F. MONSON.

ROBERT I. DRAKELEY."

Stiles F. Monson has since been compelled to pay the note, and he now claims that the defendant should contribute towards the amount so paid.

The case might have been so presented as in all respects to entitle the plaintiff to the benefit of every equitable consideration, but as the record stands we are simply requested to advise whether the defendant is bound to contribute one third of the sum actually paid in discharge of the note by Stiles F. Monson; and no claim is made or advice asked with reference to the liability of the defendant to transfer, for the benefit of other parties, the security which he holds, or, in consequence of the insolvency or removal of either of them from the state, to establish a different and more equitable basis of apportionment.

An inspection of the paper discloses nothing inconsistent

with the fact that the signatures were all written at the same time, upon the same consideration, and for the same purpose. Although the promise is expressed by the use of the singular pronoun " I," the intention of all the signers to become joint and several original makers is uncontradicted by anything on the face of the note, and such is the legal interpretation of such a promise signed at the same time by several, when the character and object of their signatures is unexplained. *Hemmenway* v. *Stowe*, 7 Mass., 58; *Chaffee* v. *Jones*, 19 Pick., 263; Story on Prom. Notes, § 466. The record however farther shows that as between themselves George A. Monson was in fact principal, and Frank S. Monson and Stiles F. Monson only sureties.

What is the legal effect of the defendant's signature ? Did he thereby become a joint and several maker with the other parties to the note, or a surety with Frank S. Monson and Stiles F. Monson of George A. Monson the principal and real maker, or a guarantor of the maker, or a surety for all the preceding signers of the note ?

The answer to this four-fold inquiry must very materially depend on the intention of the defendant to be gathered from his signature and from the attending circumstances. A party is at liberty to qualify his signature by the addition of such technical or other words as are apt and effectual to indicate his intention and describe his true character and relationship to the transaction. If he does so his obligation is measured by the words so used according to their legal import, and he is not bound beyond the liability which attaches to a signature so made. He may thus make himself a guarantor or special surety for some particular party as he pleases, or an original principal, provided he becomes a party to the paper at the time of its inception. But if he signs without qualification or addition, he is presumed to intend what the law under the circumstances implies from such a signature.

A party cannot subsequently to the execution and delivery of a note, unless in pursuance of an arrangement at the time of the execution or delivery, become a joint promissor and maker of it. The original consideration is past and executed,

and with respect to that he is a stranger, and no new and independent consideration can then be imported into the original contract so as to give the payee the right of recovery against him as a joint maker. The original contract is complete, and the note can in no sense be considered an *inchoate*, but must be regarded as a *perfected* instrument, and therefore cannot be said to be *subsequently made* by the addition of another signature. Such subsequent undertaking is independent of, and collateral to the original, and must be construed to be either a contract of guaranty or suretyship, according to the consideration and circumstances. *Miller* v. *Gaston*, 2 Hill, 191; *McCaughey* v. *Smith*, 27 N. York, 41; *Tenney* v. *Prince*, 4 Pick., 385; *Union Bank* v. *Braintree*, 8 Met., 509, 510; *Bentham* v. *Judkins*, 13 id., 265; *McConey* v. *Stanley*, 8 Cush., 85; *Stone* v. *White*, 8 Gray, 593; *Green* v. *Shepard*, 5 Allen, 590; Story on Prom. Notes, § 474, and notes.

Upon the precise question before us we have no case in point in our own decisions, and have looked in vain for any elsewhere in all respects exactly analogous. The general principle that the right of mutual contribution exists only among those who are sureties for the same thing and bound for the same debt or duty is fully recognized, and in determining the question of co-suretyship equity has respect to substance rather than form, and to the engagements which the parties have entered into more than to the instruments by which their engagements are evidenced. If several persons or sets of persons enter into contracts of suretyship which are the same in their legal operation and character, though by different instruments, at different times, and without the knowledge of each other, they will be bound to mutual contribution. 1 Leading Cases in Equity, 156, and cases there cited.

So far as mutuality in contribution in fact exists, it does not depend on the relation of joint makers of an obligation, but entirely on that of co-suretyship. The signature of a surety is not joint in its character but several, and co-sureties may sign the paper at different times, and indeed different.

Monson *v.* Drakeley.

papers, and in ignorance of the undertakings of each other, and still preserve their mutuality with respect to contribution. A party may be so situated as not to be liable to the holder as a maker, and therefore not in a condition to seek contribution from other parties who are sureties, and still retain to them such a relation that in the event of payment by one of them he will be liable to contribute. We think we have shown that a person may sign an obligation after its original execution and delivery and not thereby render himself liable to the payee as a joint maker, yet if he intends to become a co-surety with others, who as to the payee are joint and several makers, and as to each other co-sureties, he will be liable to contribution ; and we think that is the precise situation of the defendant, if he is liable at all.

With respect to the technical distinctions in legal character and effect between a surety, guarantor, indorser, and maker, of promissory notes, there is so much nicety of refinement as often to lead to great uncertainty as to the real nature of the distinctions, and especially as to the principle on which some of the assumed distinctions rest. In many cases the shades of legal difference between a guarantor and surety are so subtle and readily blended as to be almost impossible of separate and satisfactory discrimination, and sometimes also between an indorser, guarantor, and surety, and in some instances the question whether a party was maker, guarantor, or surety, has been found not free from difficulty upon any clearly defined and well-settled principles.

The practical difficulty mainly arises in attempting to determine the real character of the parties, but when that is clearly ascertained their proper legal rights and obligations can generally be readily affixed. A guarantor of the ability of the maker is in no sense in privity with the sureties. His undertaking is collateral to theirs and independent of it. He is not chargeable by them with contribution, neither can he claim it from them, and if he pays the debt his remedy is that of indemnity against the principal, by whose default he has been injured. A supplemental surety for all the prior parties, including the principal as well as sureties, has entered into a

still different engagement. His liability is to the holder in case of the default of all those parties. Like a guarantor he is not liable to contribute to the other sureties because his engagement extends to their responsibility as well as to that of the maker. As between himself and the other sureties there is no mutuality and if he is subjected his only remedy is indemnity. A co-surety undertakes with another to be responsible for the debt or duty of a third person. Their obligation though several is not collateral, but is for the same thing. While they have also a right of indemnity against their principal in case they are damnified, there is generally such mutuality between them as to render the right and duty of contribution reciprocal.

The defendant signed the note for and at the request of the principal, and for his sole benefit, without arrangement with and concurrence of the sureties, and so far as appears, without their solicitation or knowledge. He supposed it would operate to continue the term of credit of the principal as it in fact did, and was thereby beneficial to him. Under those circumstances he can hardly be said to have signed for the benefit of all the prior parties. His security came from the principal, and the consideration arising out of it moved entirely from him and not from the payee. The payee required of the principal some kind of additional security, and that requirement resulted in the defendant's signature. There was no arrangement whatever between the payee and the defendant. The payee did not agree to forbear suit against the principal, and was under no legal obligation to have done so. Possibly the fact that he did may have been sufficient, in connection with the circumstances, to constitute a valid consideration for the defendant's undertaking, so as to enable the payee to have maintained an action on that undertaking, even though it was only operative to the payee through the medium of the principal, but it is obvious that he could not have done so by simply declaring against the defendant as a joint maker of the note. But even if the defendant's signature was in no way available to the payee, it was so only through his own negligence. He might have required a different kind of security,

or a different undertaking. If he was willing to rely on this, and delay the collection of the note, it was not the defendant's fault, nor the result of any contract between the payee and himself; and upon the facts as conceded to exist, we see no reason to attribute to the defendant an intention to contract for the benefit of any one but the principal maker of the note.

This conclusion narrows the case to the inquiry whether the defendant was a guarantor of the ability of the maker upon an undertaking collateral to that of Frank S. Monson and Stiles F. Monson, or whether his engagement was in substance identical with theirs. It is clear that it was with and to the same party, and the fact that he took security from that party is perhaps as consistent with one relation as the other.

There are undoubtedly authorities which favor our holding the defendant to the character of a guarantor, in which event he would not be liable to contribution, but the special circumstances of the case as evincive of intention should receive their proper weight, and the law must be applied in view of them. We are unable to see our way to a result as clearly as we could wish because those circumstances are not of absolutely controlling force, and we are left to choose between presumptions of which neither is necessarily conclusive. We consider it of some importance to observe that the defendant is a near connexion of the principal and his sureties, and when he signed the note and took security from one of them we think he may be taken to have been conversant with their relation to the paper and to each other with respect to it, and, in the absence of all farther explanation, that we may under the circumstances hold the law to presume that, by placing his name under those of the other sureties, and attaching to it no legal character or qualification, he intended to do precisely what they had previously done; and that if the contract of the defendant was reduced to writing it would show a promise by him to George A. Monson, in consideration of the security given, to become a surety for him with Frank S. Monson and Stiles F. Monson in his obligation as the maker of the note. We believe the preponderance of facts, and of legal presump-

tions as applicable to them, to lie in that direction, and in view of the circumstance of the defendant's holding security from the principal we are satisfied that we shall on the whole by this result better subserve the purposes of natural justice and equality in equity, which are said to be the foundation on which the principle of contribution rests.

We have gone thus fully into the questions involved because of their importance, and of the peculiarity of some of the features of the case, and append the following list of the principal authorities considered in our examination of it. *Dering* v. *Earl of Winchelsea*, 1 Cox, 318; *Craythorne* v. *Swinburne*, 14 Vesey, 163; *Cooper* v. *Twynam*, 1 Turn. & Russ., 426; *Breckenridge* v. *Taylor*, 5 Dana, 110; *McNiel* v. *Sanford*, 3 B. Monr., 11; *Stout* v. *Vance*, 1 Rob. (Va.), 169; *Harrison* v. *Lane*, 5 Leigh, 414; *Daniel* v. *McRae*, 2 Hawks, 590; *Thompson* v. *Sanders*, 4 Dev. & Bat., 404; *Bell* v. *Jasper*, 2 Ired. Eq., 597; *Cutler* v. *Emory*, 37 N. Hamp., 567; *Whitehouse* v. *Hanson*, 42 id., 9; *Lapham* v. *Barnes*, 2 Verm., 213; *Langley* v. *Griggs*, 10 Pick., 121; *Chaffee* v. *Jones*, 19 id., 260; *Warner* v. *Price*, 3 Wend., 397; *Harris* v. *Warner*, 13 id., 400; *Norton* v. *Coons*, 3 Denio, 130; *S. C.*, 2 Selden, 33; *Campbell* v. *Mesier*, 4 Johns. Ch., 334.

We advise the Superior Court to decree that the defendant is liable to contribute to the plaintiff the sum and proportion claimed by him.

In this opinion SEYMOUR, C. J., PARK and FOSTER, Js., concurred.

CARPENTER, J. It seems to me that the defendant may more properly be regarded as a guarantor and therefore not liable to contribution; but I am disposed to acquiesce in the result, on the ground that, having signed the note as maker, he *intended* to become liable as such, and that the other parties so understood it. That being so, there is no injustice in holding him responsible on his contract according to the intention of the parties. If he is to be regarded as a maker at all, I think he is a maker for all purposes, and liable, not only to contribution, but also to the holder directly.