# CASES

## ARGUED AND DETERMINED

IN THE

# ST. LOUIS COURT OF APPEALS.

## MARCH TERM, 1876.

---

BASIL DUKE *et al.*, Appellants, *v.* ASA HARPER *et al.*, Respondents.

### April 10, 1876.

A contract between an attorney and client that the attorney shall prosecute a suit for the recovery of real or personal property, the attorney to receive a portion of the property as compensation for his services, there being no agreement that the attorney should advance costs or furnish money, is not void in Missouri for champerty. *Semble* that it would not be void even were an agreement to advance costs part of the contract.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

*Davis, Thoroughman & Warren*, for appellants, cited: 4 Bl. Com. 135 ; Chitty on Con. (5th Am. ed.) 675 ; Evans *v.* Bell, 6 Dana, 179 ; Wilhite *v.* Roberts, 4 Dana 172 ; Cain *v.* Warford, 33 Md. 23 ; Mahoney *v.* Bergin, 41 Cal. 423 ; Hoyt *v.* Thompson, 1 Seld. 347 ; Bayard *v.* McLane, 3 Harr. (Del.) 139 ; Major *v.* Gibson, 1 Patt. & H. 48 ; Tapley *v.* Coffin, 12 Gray, 420 ; Huffman *v.* Vallejo, 45 Cal. 564 ; Martin *v.* Clark, 8 R. I. 389 ; Northcraft *v.* Martin, 37 Mo. 361.

*Martin & Lackland*, for respondents, cited: Stanley *v.* Jones, 7 Bing. 369; Thurston *v.* Percival, 1 Peck, 415; Lathrop *v.* Amherst Bank, 9 Metc. 489; Bird *v.* Odam, 9 Ala. 755; Halloway *v.* Lain, 7 Port. 488; Key *v.* Vattier, 1 Harry, 58; Loffutt *v.* Jelly, 22 Md. 471; Boardman *v.* Thompson, 35 Iowa, 487; Grill *v.* Levy, 61 C. B. (N. S.) 72; Underwood *v.* Reby, 19 Wis. 412; Baker *v.* Lane, 14 Wis. 131; Croly *v.* Ross, 13 Ind. 201; Elbeck *v.* McLelland,. 17 Aa. 206.

BAKEWELL, J., delivered the opinion of the court.

The petition in this case states that plaintiffs are attorneys at law; that defendants claimed to be owners, as tenants in common in fee of the undivided three-fifths of certain real estate in St. Louis county, fully described, devised to defendants by one Eliza Haycraft, and also of certain personal property as legatees and heirs at law of said Haycraft; that certain persons named in the petition were in possession of the said real estate and personal property, under conveyances alleged to have been executed by said Haycraft to them; that defendants, being desirous of recovering said real estate and personal property, and of retaining the professional services of plaintiffs for that purpose, entered into an agreement in writing with plaintiffs, dated June 3, 1872, whereby it was agreed between plaintiffs and defendants that, in consideration of the service of plaintiffs, to be rendered as therein, defendants would convey to plaintiffs one-fourth part of so much of the several shares of said defendants of said real estate and personal property as might be recovered from said adverse claimants, whether by suit or compromise, or otherwise, and would make all proper conveyances for the assurance of said interest and shares of said property to plaintiffs; plaintiffs to be the exclusive judges of what suits or proceedings should be instituted for the recovery of the rights of defendants in the premises, and defendants engaging plaintiffs as their attorneys at law in the prem-

ises. Plaintiffs agreed that they would diligently proceed with the prosecution of such suits and proceedings as they should deem proper for the attainment of the rights of defendants in said property in controversy, and prosecute the same to a final determination in courts having jurisdiction, for the compensation so as aforesaid to be paid to them, and, in case nothing was recovered by said proceedings or by compromise, plaintiffs would charge nothing for their service. Plaintiffs allege that, in accordance with the agreement, they did institute proceedings and proper and fit suits, and duly prosecuted the same in the proper courts, and were ready, willing, and able to prosecute them to a final determination, and fully performed all the terms of said agreement on their part; but that, while the suits so commenced were pending, defendants wrongfully and fraudulently assigned their claims and title interest to said personal property and real estate to the said adverse claimants, the defendants in said pending suits, and dismissed said suits, thereby preventing plaintiffs from prosecuting the same, from recovering said property, and from receiving of defendants one-fourth of their several shares of the same, under said agreement. Plaintiffs say this property is worth $150,000, and defendants' share thereof $90,000, and that, by reason of the premises, they have been damaged in the sum of $22,500, for which they ask judgment.

Defendants demurred to the petition of plaintiffs, and for grounds of their demurrer allege :

1. That said petition does not set forth facts sufficient to constitute a cause of action.

2. That the contract on which the suit is founded is champertous, void, and illegal.

This demurrer was sustained in the Circuit Court, and final judgment entered, on the demurrer, in favor of defendants. The cause is brought to this court by appeal.

This record presents but one question for our determina-

tion.    It is this : Whether a contract made between attor-
ney and client that the attorney shall prosecute a suit for
the recovery of real or personal property, the attorney to
receive a portion of the property recovered as full compen-
sation for his services, is void in Missouri, even though
·there is no agreement that the attorney shall pay costs or
furnish any money toward the expenses of the suit, or of the
proceedings instituted with a view to the recovery of the
property in dispute.

If this contract is void, it is void for champerty.    It
seems necessary to determine, therefore, what is champerty ;
and, if this comes within the definition of the offense, then
to decide whether a champertous contract is void in this
State..

Maintenance is an officious intermeddling in a suit that
noway belongs to one, by assisting either party with money,
or otherwise, to prosecute or defend.    It is said to be an
offense against good morals, in that it keeps alive strife, and
perverts the remedial powers of the law into an engine of
oppression.

Coke makes champerty a subdivision of maintenance, and
says it is "to maintain to have part of the land, or any-
thing out of the land, or part of the debt, or other thing
in plea or suit, and then is called *cambipartia*" (*cambi-
partitio*), "or maintenance." Co. Lit. 368, *b*.

Hawkins follows Coke (Hawk. P. C.), and, if this defi-
nition is to be accepted as exact, there can be no question
that the contract before us is champertous.

But the definition of Coke is not followed by later writers..

" Champerty, " says Blackstone, " is a species of main-
tenance, being a bargain with a plaintiff or defendant *cam-
pum partire*, if they prevail at law, whereupon the cham-
pertor is to carry on the party's suit at his own expense. "
This definition is adopted by Chitty.    Con. 676.    The law
dictionaries, Tomlin's, Jacob's, Wharton, and Bouvier, all
make the carrying on the suit at the expense of the cham-

pertor of the essence of the offense. And the first English statute on the subject (33 Edw. I.) defines champertors as those who move pleas or suits, or cause them to be moved, either by their own procurement or by others, and sue them at their proper costs, to have part of the land in variance, or part of the gain.

If these latter definitions are accurate, the contract sued on is not champertous, and plaintiffs could maintain their suit.

Little help in arriving at an accurate definition of the offense is to be had from the decided cases, as the decisions are conflicting.

Champerty was an offense at common law, and also by various statutes, in the reign of Edward I., Edward III., and Henry VIII. The weight of authority would seem to be in favor of the view that the offense is complete, if the contract be to receive a part of the thing to be recovered, only when the contracting party is to aid the suitor by paying costs and expenses of the suit. But, in view of the great authority of the definition of the offense by Coke, it cannot be positively determined that a contract is clearly not champertous merely because the attorney does not agree to pay the costs.

The question next to be determined is, whether a champertous contract be void in Missouri.

By the act of January 19, 1816, the Spanish law was abolished in Missouri, and the common law of England adopted in its place. That statute provides that "the common law of England, and all statutes and acts of Parliament made prior to the fourth year of James I., and which are of a general nature, not local to that kingdom, which common law and statutes are not repugnant to, or inconsistent with, the Constitution of the United States, or the statute law in force for the time being, shall be the rule of action and decision in this State, any law, custom, or usage to the contrary notwithstanding. 2 Wag. Stat. 866, sec. 1.

Now, there can be no question that, in the fourth year of

James I., champerty was a criminal offense in England, and that then, and until a very recent period, at least, a champertous contract was held, and would probably now be held, to be void in that country ; but it is also true that, at the same period, and even down to our own days, wager of battel and wager of law were methods of trial upon which the defendant in a writ of right, and in some other forms of action, might insist in England. It is not pretended that they were introduced into Missouri with the common law, and we must determine whether the statute just recited makes the English law as to champerty of effect in this State.

By adopting as well the common law as such English laws as are of general nature, not local to that kingdom, the people of this State recognized and adopted, as one entire system, so far as applicable to our situation and government, a vast and comprehensive body of laws, consisting of infinite particulars applicable to a great empire, and which wisdom and prudence, both legislative and judicial, are constantly modifying and adapting to our varying circumstances.

Because champerty was a highly penal offense, both at common law and by statute, in the reign of James I., we do not think that it conclusively follows that champerty is an offense in Missouri to-day. The evil of buying of titles and pretended rights of persons not in possession, alleged as the mischief provided against by the laws against champerty, could hardly be considered a mischief or wrong in an unsettled country, where few owners would be likely to occupy even the premises they actually had, or might readily acquire.

The generic offense of maintenance, of which champerty is a species, rests mainly on a series of statutes ending with 32 Henry VIII. It was, however, also punishable by fine and imprisonment at common law, and subjected the offender to a suit for damages.

The reasons for the ancient doctrine on the subject are

admitted even now, in England, to have mainly ceased, and the courts treat the old learning on the subject with great disfavor. In *Masters* v. *Miller*, 4 T. & R. 320, Butler, J., says: "It is curious, and not altogether useless, to see how the doctrine of maintenance has, from time to time, been received at Westminster Hall. At one time, not only he who laid out money to assist another in his cause, but he that by his friendship or interest saved him an expense which he would otherwise be put to, was guilty of maintenance. Nay, if he officiously gave evidence, it was maintenance; so that he must have had a subpœna or suppress the truth. That such doctrine, repugnant to every honest feeling of the human heart, should soon be laid aside must be expected. Accordingly, a variety of exceptions were soon made."

The rule of common law which prohibited the assignment of a cause in action was a breach of the law of maintenance. Coke expressly says so, and lays down the reasons as identical with those against champerty. Co. Lit. 114, *a.* But this was long ago so explained away as to remain, at most, only an objection to the form of action; and in this State the technical rule of the common law is utterly swept away, in this regard, in a manner which manifests that hostility to the principles of the law of champerty and maintenance which is so general in our sister States.

In 1798 a statute was enacted in New York against maintenance. In 1830 the revisors, in their report to the Legislature, say: "It is proposed to abolish the law of maintenance and to qualify that of champerty." Accordingly, the old law of maintenance was included in the general repealing act, and Chancellor Walworth speaks of the "absurd doctrines of maintenance that grew out of the necessities of a semi-barbarous age being swept away in the general revision, having been virtually abrogated long before that time."

It was long ago held in Pennsylvania (*Stoever* v. *Whit-*

*man*, 6 Binn. 416), Chief Justice Tilghman delivering the opinion of the court, in 1814, that it is no objection to a conveyance of land that the grantor is out of possession. "It may be affirmed with certainty," says that learned judge, "that the law on that subject, as held there in England, was never adopted. From the equality of conditions of persons in this country, there was no danger of maintenance from the interference of powerful individuals."

It has been recently held in Wisconsin that an agreement between attorney and client that the attorney shall be paid by receiving part of the land recovered is not void in that State (*Allard* v.*Lamirande*, 29 Wis. 502) ; and the court very truly says that the old common-law rules as to champerty have been necessarily qualified or restricted by judicial decisions, or otherwise ; that agreements for a fee contingent on success are neither immoral, disreputable, nor illegal ; and that a contract that the attorney shall receive a certain percentage, measured on the amount recovered, which is undoubtedly good, cannot be on principle distinguished from an agreement to receive a percentage from the amount recovered itself, which has been held to be champertous and void. The court holds, however, that, under the authorities, the contract before it would have been bad had the attorneys agreed to pay the expense of the action.

In Georgia it is held that 32 Henry VIII., ch. 9, is not law in that State. *Cain* v. *Monroe*, 23 Ga. 82.

In California it is held that champerty is not an offense ; and champerty will not avoid a contract. *Matthewson* v. *Fitch*, 22 Cal. 86. This decision has been recently affirmed.

In Massachusetts the old doctrine is adhered to, but not with favor. 5 Pick. 548.

In New Hampshire and Iowa (5 N. H. 181 ; 3 Iowa, 482) champerty does not avoid a contract ; the offense is unknown.

In Connecticut it is declared that the reasons which made a law against champerty and maintenance salutary or neces-

sary in England do not exist here—certainly not to the same extent. *Richardson* v. *Rowland*, 40 Conn. 563 (1873).

Vermont, Delaware, and Tennessee discard the rule. *Danforth* v. *Streeter*, 28 Vt. 490 ; *Bayard* v. *McLane*, 3 Harr. (Del.) 139 ; *Sherley* v. *Riggs*, 11 Humph. 53.

In Texas it is declared that the laws against champerty are not to be regarded as part of the common law in that State. The court says that the laws adapted to a kingdom, with a strong landed aristocracy, are wholly unfitted for a country where we have lands for the millions ; and adds that, if a lawyer helps his client to recover lands from the possession of another, and takes part of the land for his fee, it is no breach of the ethics of the profession, or of the moral law. *Bentinck* v. *Franklin*, 38 Tex. 458 (1873).

In Virginia it is said that the question of champerty, or a savor of champerty, is wholly out of the way in discussing the validity of a contract. *Major* v. *Gibson*, 1 Patt. & H. 84.

Chief Justice Parker, in giving the opinion of the court in *Thurston* v. *Percival*, 1 Peck, says that "it sometimes is useful and convenient, where one has a just demand which he is not able, from poverty, to enforce, that a more fortunate friend should assist him, and wait for his compensation until the suit is determined, and be paid out of the fruits of it." And Mr. Justice Grier, in giving the opinion of the Supreme Court of the United States in *Roberts* v. *Cooper*, 20 How. 467, says that the ancient English doctrines respecting champerty and maintenance have not found favor in the United States, and that the enforcement of the law here would not always, perhaps not generally, promote justice.

No such contract has been declared void in our State, and we see no necessity for introducing the doctrine now. The state of society amongst us does not require it. The tendency of legislation and of judicial decisions is, we think, against it. Clients may be safely left to the protection of

the courts, who will relieve against extortion or unfair dealing should a proper case arise. Public policy requires no other protection. Analogies from the Roman law, which regarded compensation to the advocate as a mere *honorarium* or gratuity, or from the old common law, which regarded it in a similar light, are out of place in a practical age. According to English law, the physician can recover a fee, the surgeon cannot; the attorney is legally entitled to compensation; but the barrister's services must be paid in advance, because they are a mere gratuity. With us, the laborer is worthy of his hire, and the universal practice, and the rule of law, places the lawyer, the doctor, the preacher, and the school-master on the same footing of common right as to the recovery of compensation.

The whole doctrine of maintenance and champerty is a relic of a state of things long since passed away. During the Crusades, when land-holders were absent from home, dishonest men, who had iniquitously asserted claims to the land of absent owners, frequently, on the return of the proprietor, assigned their pretended claims to some powerful neighbor, that by the weight and influence of his name the right cause might be faced down; and it was to put an end to such wrongs that the statutes against maintenance and champerty were framed, in affirmance of the common law. But there is no such mischief to be apprehended in our days, and the reason of the law would seem to have ceased. Contracts illegal at common law, as being contrary to public policy, are such as injuriously affect or subvert the public interest. *Ex turpi contractu actio non oritur.* But we see nothing contrary to the welfare of society and the administration of justice in upholding a contract between attorney and client that the attorney shall be paid out of the thing recovered. On the contrary, many a poor man with a just claim would find himself unable to prosecute his rights, could he make no arrangement to pay his advocate out of the proceeds of the suit. Such contracts have been

of constant occurrence throughout this State, and, if they are immoral or illegal, there are perhaps few attorneys in active practice amongst us who have not been habitual violators of the law.

The Supreme Court of Illinois has recently decided a champertous contract void. It is true that the contract considered by the court in that case (*Thompson* v. *Reynolds*) differed from, the one at bar, in that it provided that all expenses of litigation should be borne by the attorneys, and it was therefore champertous, according to Blackstone's definition, while the contract before us was not. But the views expressed in Illinois are irreconcilable with those upon which this opinion is based. The same may be said of the case of *Scobey* v. *Ross*, 13 Ind. 117, and of other decisions in Kentucky and elsewhere. It is because of the conflict of authority on the subject that we have gone somewhat more at length into the question than was perhaps necessary, though no more so than the importance of the principles involved seems to demand.

We are of opinion that the Circuit Court erred in sustaining the demurrer to the petition of plaintiff, and the judgment of the Circuit Court is reversed and the cause remanded, to be proceeded with in accordance with this opinion. The other judges concur.