Minshall, J.
The action below was a suit for contribution by one, who, as surety, claimed to have paid the debt of the principal, against two others claimed to have been co-sureties. The case was submitted in the common pleas on the pleadings. The court rendered judgment in favor of the defendants, which, on error was reversed by the circuit court, and judgment rendered in favor of the plaintiff against one of the defendants, plaintiff in error, the other being found insolvent; and this proceeding is prosecuted to reverse the judgment of the circuit court.-
• The questions arise upon the averments of the petition, which are not controverted by the answer of either defendant, except as will be presently noted.
It appears from the petition that Estella Everett was in April, 1879, a non-resident minor possessed of property in this state; that James T. Boyd was then appointed her trustee of the property by the probate court of Seneca county, and that he with J. T. Robinson and W„ H. Free, sureties, gave bond according to law for the faithful performance of his duties; that he entered upon the performance of his trust, and there came into his hands a large amount of property; and having filed his final account, the same was settled in the probate court June 5, 1888, by which there was found in his hands the sum of $2,304 — which he was ordered to pay over according to law. That after the account had been filed, Boyd in August, 1887, made and delivered to Robinson, one of the sureties, a mortgage of indemnity on certain real estate; and that after- *62 wards, on December 29,1888, the plaintiff, Virginia E. Boyd, to further secure the payment of the amount found due Estella Everett, who was then of age, and at the request of Boyd, who was her husband and of Estella Everett and Robinson, assigned and delivered a policy of life insurance she then owned upon the life of her husband, to be held as collateral security for the sum due on the bond. That she received no consideration for the assignment, and that the policy was simply pledged as surety of her husband. That in June, 1889, the mortgage given Robinson was foreclosed, and the sum realized, $1,236.95, was applied in part payment of the indebtedness, leaving a balance of some $1,278, still due. Boyd died insolvent in September, 1889. Afterwards Miss Everett collected the full amount of the insurance, amounting to $1,559, and applied the sum of $1,311 to the payment of the balance due her including interest. The plaintiff then avers the insolvency of Free; a demand on Robinsion made August 5, 1895, for contribution, and his refusal to contribute.
Robinson, by answer, denied that the policy of insurance was assigned at his request or with his knowledge. Free made a like answer; neither, however, denying any other averment of the petition. Two questions arise upon the case made by the pleadings: 1. Whether there was any consideration for the pledge by the plaintiff of her policy of insurance as security for the debt of her husband, principal on the bond. 2. If so, whether she is entitled to contribution from the sureties on the bond.
1. There is no question but that if the plaintiff was not bound in an obligation to the creditor on the bond — if she was not obliged by the pledge of *63 her policy to permit it to be applied in payment of the debt of her husband on the bond, she cannot compel either of the sureties to contribute to her simply from the fact that it was so applied. As will be hereafter seen, the right to contribution arises from the discharge by one of a burthen common to himself and others. If one who discharges a debt was not bound to the creditor to do so, he has no claim against others who were bound to do so. As to such he is a mere volunteer. It is also true that there must have been some consideration for the pledge other than the execution of the bond. At the time the pledge was made the bond had been executed and the rights and liabilities of all the parties to it had been fixed. It was no accommodation to the husband to promise to pay the debt •on the bond, or to pledge her property to secure it, for he had already obtained and enjoyed the trust by the acceptance of his bond with the sureties on it. As to her, the execution of the bond was a past transaction, and constituted what in law is termed an executed consideration. The law applicable to this view of the case is clearly stated by a very learned author, “Where a promise is made^to pay the already existing debt of another, there must be some new consideration, or the promise will be void. The original consideration, which supports the principals contract, cannot be made to operate on the new promise. Such promise is nudum pactumMetcalf on Contracts, 172. But the consideration for a promise, though generally, is not always confined to a benefit to the promisor; any forbearance, detriment, loss or damage given or suffered by the promisee is a sufficient consideration to support a promise to him. Nor is it necessary that the consideration *64 for an agreement should be adequate in value. As said by the author just referred to, “however slight the benefit to the promisor, if of any legal value and however slight the damage, loss, or inconvenience to the promisee, if of any legal estimation, is sufficient to support a contract.” . Metcalf on Cont., 165; Clark v. Sigourney, 17 Conn., 511, 517.
. The question then arises, whether by reason of loss or detriment to Miss Everett, the plaintiff was bound by the act of pledging her property as security for the amount due upon the bond as ascertained by the accounting and judgment of the court. There is no such averment in the petition, nor was she required to make such an averment; a consideration will be presumed from the act of making the pledge. This might, however, be controverted; but would be a matter of defense; and no such defense is made by the pleading. A pledgee has the advantage always awarded one in possession; the possession is deemed rightful until' the contrary is made to appear. So that, if, on any reasonable presumption, a consideration may have existed, such presumption will support the promise; for had the defense been made, she might have been able to show the fact. It appears that at the time the pledge was made, Miss Everett had arrived at age, and was entitled to her money; that Boyd was embarrassed, and had given to one of the sureties a mortgage of indemnity. The fair inference then is that Miss Everett was then seeking either payment or security for her claim; and that the policy was assigned in pledge to satisfy her. It is averred that it was made at'her request. Now had it not been given, there is nothing to show that she might not either have obtained payment in money or *65 property, or have obtained adequate security by a mortgage on the property of the debtor. The fact then that she may have pretermitted her efforts to obtain immediate payment, or security by mortgage on the property of her debtor, induced by the pledge made by the plaintiff, would have been such a pretermission of efforts on her part to better her condition at a time when she might have done so by obtaining further security, as would constitute a consideration for the pledge then made by the plaintiff, or would estop her from saying there was none. Therefore the plaintiff could not, after pledging her policy under these circumstances, have recovered it, without satisfying the amount due on the bond; and she was therefore bound to the extent of the value of her policy for the payment of the amount due on the bond. After making the pledge she was as much bound in an obligation for the payment of the debt arising on the bond, to the extent of her policy of insurance, as if she had signed the bond, limiting her obligation to a definite sum.
2. As to the second question, the claim of the defendant below is, that the plaintiff is not entitled to contribution, because there is no privity of contract between them, and that the pledge was made without his procurement or assent, and after the bond had been executed and accepted. We do not find the doctrine of contribution so limited, nor is it required by the principle on which it rests. It is not founded on contract, but arises from the equitable consideration that persons subject to a common duty or debt, should contribute equally to the discharge of the duty or debt; and so where one performs the whole duty or pays the debt, or *66 more than his aliquot part, each of the others should .contribute to him, so as to equalize the discharge of what was a common burthen. Lord Redesdale in Stirling v. Forrester, 3 Bligh, 575, 596, comprises the whole reason and extent of the doctrine in the following language. ‘ £At the bar it was contended, that the rights and obligations of co-sureties are founded on a supposed contract between them; and that in this transaction they entered into the obligation without communication with each other. The question depends upon equity, not upon contract; and in this case a contract is to be implied-. The decision in Dering v. Winchelsea, 1 Cox., 318, proceed upon a principle of law which must prevail in all countries, that where several persons are debtors, all shall be equal. The doctrine is illustrated in that case by the practice in questions of average, etc., where there is no express contract, but equity distributes the loss equally. On the prisage of wines, it is immaterial whose wines are taken; all must contribute equally. So it is where goods are thrown overboard for the safety of the ship; the owners of the goods saved by that act must contribute proportionally to the loss. The duty of contribution extends to all persons who are within the scope of the equitable obligation.” In the application of this do«trine it is said, (2 Waite’s Actions and Defenses, 297) “If several persons, or several sets of persons, become sureties for the same duty or debt, of, to and for the same persons, though by different instruments, at different times,-and without a knowledge of the obligations of each other, they will be bound to mutual contribution. ” And see also, the cases there cited. The doctrine as here stated is well settled by the authorities. 3 Pom. Eq. *67 Jurisp., section 1418; Brandt, Suretyship, section 225; Russell v. Failor, 1 Ohio St., 328; Oldham v. Broom, 28 Ohio St., 41. In the leading case of Dering v. Winchelsea, 1 Cox., 318, 321, where the doctrine was very fully considered it is said, “If we take a view of the cases both in law and equity, we shall find that contribution is bottomed and fixed upon principles of general justice, °and does not spring from «ontraet; though contract may qualify it;” and it was there held, on the ground of equality of burthen and benefit, that where three sureties are bound by different instruments, but for the same principal and for the same engagement, they shall contribute. In Chaffee v. Jones, 19 Pick., 260, it appeared that the plaintiff became a party to a note as surety, after it had been signed by another as surety for the principal, but without the knowledge or consent of the former surety. And it was held, that having paid the note he was entitled to contribution from the other. Shaw, C. J., observed, that the equitable obligation to contribute, “constitutes an implied privity in law, On which assumpsit will lie.” See also, Young v. Shunk, 30 Minn., 503.
So that, where two or more persons are bound as sureties for the discharge of the same debt, though by different modes, its discharge by one, conferring a benefit on the others, raises a right in his favor for contribution.
It is also suggested that there was no mutuality —that if Robinson had paid, he could not have compelled contribution on the part of the plaintiff. This we think is a misapprehension; if it were so, it would be an anomaly in the doctrine. His right to contribution against her, had he paid the debt, would have rested upon precisely the same *68 principle of equity as does her right against him —his payment would have relieved her property from the pledge, or, what is the same thing, would have relieved her of a burthen, that was common to both of them. The right does not depend upon the order in which each party became liable, the common liability is the crucial test. The case of Monson v. Drakeley, 40 Conn., 552, seems directly in point. There A, as principal and B and C as sureties signed a note, but the fact of suretyship did not appear therefrom. The holder afterwards became dissatisfied with the solvency of the signers of the note, and the debtor, A, procured D, a third person, to sign the note under the names of the other signers, upon a consideration moving from A to D. Afterwards A became insolvent, and C was obliged to pay the note. Held, he was entitled, to contribution from D. The court said, that “the right to contribution exists only among those sureties, who are liable for the same thing. But equity looks at substance more than form, and if several persons enter in to contracts of suretyship, which are the same in their legal character and operation, though by. different instruments, at different times, and without the knowledge of each other, they will be bound to mutual contribution. ” See also Whitehouse v. Hanson, 42 N. H., 9.
Hence it cannot be said that there was a want of mutuality between the plaintiff and Robinson — the right of either against the other, on paying the debt, was the same.
It is also claimed that the plaintiff by simply pledging her property made no promise of payment, and cannot for this reason claim contribution. This we think is also, a misapprehension-It seems to assume that there is no promise con *69 nected with a pledge; but in every pledge there is an implied promise that the property pledged may be sold and the proceeds applied in payment of the debt; and this, in substance and effect, is as much a promise of payment as that made by a surety in signing a bond, payment in any event can only be made by the payor applying his money or property to the debt.

Judgment affirmed.

Spear, J., dissents.