(No. 4843.   March 26, 1928.)

ALFRED  AGREN  and  ZINA  AGREN, Appellants,  **v.**
E. M. STAKER, Respondent.

[267 Pac. 460.]

A. E. Later and Jones, Pomeroy & Jones, for Appellant.

F. A. McCall, and E. M. Holden, for Respondent.

DOWNING, District Judge.—In 1920 two actions in conversion were instituted by the Bank of Roberts against respondent and Menan Milling Company, among others, as defendants. These actions were consolidated, and for present purposes may be considered as one action. Upon the trial, a joint judgment was rendered against the defendants for the value of the property held to have been converted. From that judgment respondent and the defendant Menan Milling Company prosecuted separate appeals to this court, giving separate *supersedeas undertakings*. The undertaking furnished by respondent was executed by R. S. Watson and W. D. Molen as sureties, and the undertaking furnished by Menan Milling Company was executed by Alfred Agren, one of the appellants here, and F. B. Ellsworth, as sureties. Upon the hearing of said appeals in this court the judgment of the lower court was affirmed. Thereafter, the judgment creditor in said action, Bank of Roberts, filed a motion, pursuant to C. S., sec. 7155, for judgment against all of the sureties above named. The record discloses that all of the sureties were represented by counsel at the hearing upon said motion, and upon such hearing the motion was granted and a joint and several judgment was entered against all of said sureties. No appeal having been taken from that judgment, it must here be considered as final. Thereafter, Agren

or Zina Agren, his wife, paid to the judgment creditor the amount of the judgment debt and took assignments of both of the judgments mentioned to Zina Agren. Thereupon, respondent filed a motion to have said judgments satisfied upon the ground of payment. After a hearing on this motion, at which much evidence was introduced on behalf of the respective parties, the lower court entered an order directing that the judgments be satisfied.

From the order last above mentioned Alfred Agren and Zina Agren have appealed, assigning twelve specifications of error. Inasmuch, however, as we deem those assignments of error dealing with the substantive rights of the parties, and particularly with the right of the surety to be subrogated to all rights of the judgment creditor, to be conclusive, only such specifications of error as relate thereto will be considered.

The briefs of the respective parties treat exhaustively of the question of whether or not, under the proof, the assignments of judgment were the separate property of Zina Agren, or belonged to the community estate of herself and Alfred Agren. As we do not deem the determination of that matter material to the ultimate issues, we will consider the assignments community property, as respondent contends.

With or without assignments of the judgments in question, appellant Alfred Agren became subrogated to all the rights of the original judgment creditor, and was entitled to have such judgments kept alive in order to secure to him such rights. C. S., sec. 7239, reads as follows:

"Whenever any surety on an undertaking on appeal, executed to stay proceedings upon a money judgment, pays the judgment, either with or without action, after its affirmation by the appellate court, he is substituted to the rights of the judgment creditor and is entitled to control, enforce and satisfy such judgments in all respects as if he had recovered the same."

The legislature has thus set forth in no mistakable terms the rule of law by which this court must be guided, and

the record shows that this case comes directly within the purview of that section of the statutes. Agren was a surety upon an undertaking on appeal executed to stay proceedings upon a money judgment. After the affirmation of that judgment by the appellate court, and after judgment was entered pursuant to statute against the sureties upon both *supersedeas* bonds, jointly, Agren paid the judgment to secure payment of which the *supersedeas* undertakings were given, and under the statute he is substituted to the rights of the judgment creditor and "is entitled to control, enforce and satisfy such judgments in all respects as if he had recovered the same." There can be no question but that the Bank of Roberts, the original judgment creditor, could enforce its judgment against either or both of the original judgment debtors, and could also enforce the judgment taken against the sureties on the respective *supersedeas* bonds. To those rights appellant, by virtue of the statute, has been subrogated, except that he, having been one of the judgment debtors under the judgment against the sureties, may be permitted to recover from the other sureties under said judgment only their proportionate share.

The statute referred to, while controlling, is largely only declaratory of the equitable rule, which is well stated in Stearns on Suretyship, 3d ed., at p. 442, as follows:

"The generally accepted view now is that where a judgment is paid by one who is collaterally liable as surety, whether the creditor has a joint judgment against the principal and surety, or separate judgment against them or a judgment against the principal only, the surety paying is subrogated to all the rights and liens of the creditor under the judgment with the same position of priority occupied by the creditor."

In the case of *Lidderdale v. Robinson,* 2 Brockenbrough's Reports of Marshall's Decisions, 159, the opinion, written by Chief Justice Marshall, reads in part as follows:

"The cases suppose the surety to stand in the place of the creditors as completely as if the instrument had been

transferred to him, or to a trustee for his use. Under this supposition, he would be at full liberty to proceed against every person bound by the instrument. Equity would undoubtedly restrain him from obtaining more from any individual than the just proportion of that individual; but to that extent, his claim upon his co-surety is precisely as valid as upon his principal.''

That two of the sureties were obligated upon a different undertaking than that upon which Alfred Agren was obligated would in nowise alter the rule. Respondent stresses his contention that there can be no right of contribution between Agren and the sureties on the *supersedeas* bond given by respondent, because they were sureties upon different undertakings and no privity of contract existed between them. While that seems to be immaterial here, as the obligations of all sureties were merged in the joint and several judgments taken against them, yet, had no such judgment been taken, the rule to be applied to the facts is not that contended for by respondent. The rule applicable here is well expressed in *Robinson v. Boyd*, 60 Ohio St. 57, 53 N. E. 494, a leading case on this question, as follows:

''The duty of contribution extends to all persons who are within the scope of the equitable obligation. In the application of this doctrine it is said (2 Waite's Actions and Defenses, 297). . . . . If several persons or several sets of persons, become sureties for the same duty or debt, of, to and for the same persons, though by different instruments, at different times, and without knowledge of the obligations of each other, they will be bound to mutual contribution. . . . . So that, where two or more persons are bound as sureties for the discharge of the same debt, though by different modes, its discharge by one, conferring a benefit on the others, raises a right in his favor for contribution.''

''It is also suggested that there was no mutuality— that if Robinson had paid, he could not have compelled contribution on the part of the plaintiff. This we think is a misapprehension; if it were so, it would be an anomaly

in the doctrine. His right to contribution against her, had he paid the debt, would have rested upon precisely the same principle of equity as does her right against him—his payment would have relieved her property from the pledge, or, what is the same thing, would have relieved her of a burthen, that was common to both of them. The right does not depend upon the order in which each party became liable, the common liability is the crucial test.''

And in *Monson v. Drakely*, 40 Conn. 552, 16 Am. Rep. 74, another leading case, it was said:

''The right of mutual contribution exists only among those who are sureties for the same thing. But equity looks at substance more than form, and if several persons enter into contracts of suretyship which are the same in their legal character and operation, though by different instruments, at different times, and without the knowledge of each other, they will be bound to mutual contribution.''

In the instant case, both *supersedeas* undertakings mentioned were given to stay proceedings in the same cause and both were conditioned for the payment of the same judgment in the event the same was affirmed.

The order of the lower court appealed from deprives a surety of the right to resort to those who were rightfully obligated to pay the debt in the first instance, as well as depriving him of the right of contribution from cosureties who should assist in bearing the common burden of suretyship, and were there no statute we believe the equitable doctrines of subrogation and contribution would be applied by a court of equity, to the end that those primarily liable should not put their burden upon him who has only assured their performance of their obligation, and would resort to those doctrines to compel those who rest under a common liability to bear its burden equally.

The order appealed from is vacated. Costs to appellants.

Wm. E. Lee, C. J., and Budge, Taylor and T. Bailey Lee, JJ., concur.

Petition for rehearing denied.